## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN DOE and JANE DOE, as Parents and Next Friends of D.M., a Minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 11-CV-3355 |
| CHAMPAIGN COMMUNITY UNIT 4 SCHOOL DISTRICT, et al., | ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendants' Motion to Dismiss Plaintiffs' Complaint (d/e 12) (Motion). For the reasons set forth below, this Court recommends that the Motion should be ALLOWED in part and DENIED in part.

### STATEMENT OF FACTS

For purposes of the Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint and Demand for Jury Trial (d/e1) (Complaint) and draw all inferences in the light most favorable to the Plaintiffs. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Complaint alleges the following.

Plaintiffs John and Jane Doe are the parents and next friend of the minor D.M. D.M. is a fifteen year old African American boy who lives in Champaign, Illinois. On or about January 21, 2011, D.M. was a full-time regular student at the Academic Academy (Academy) operated by Defendant Champaign Community Unit 4 School District (District). Defendant Rhonda Howard was the principal of the Academy at that time. Defendant Arthur R. Culver was the Superintendent of the District. Defendants Sue Grey, Stig Lanesskog, Tom Lockman, Greg Novak, Jamar Brown, Kristine Chalifoux, and David Tomlinson were members of the District's Board of Education (Board).

On January 21, 2011, Howard entered D.M.'s classroom prior to D.M.'s arrival at school that day. At that time, Howard detected the odor of cannabis in the classroom. Howard then left the classroom. Complaint, ¶¶ 19-21.

D.M. then arrived at the Academy and went to his classroom. About thirty students were in the classroom. D.M. was one of only two African American students in the classroom. Howard then entered the classroom. Howard did not have reasonable cause to focus on D.M.; however, she removed D.M. from the classroom and took him to her office. Howard searched D.M.'s coat and backpack. She required D.M. to remove his

shirt, unbutton his pants, remove his belt and shoes, and partially disrobe.[1] Howard did not find any contraband on D.M. Howard did not notify D.M.'s parents prior to conducting this search. After Howard completed the search, she allowed D.M. to return to class. Complaint, ¶¶ 22-35.

Howard did not search any other student in the classroom or their belongings. The Plaintiffs allege that Howard did not have reasonable cause to search D.M. The Plaintiffs further allege that Howard conducted the search pursuant to the policies and directions of Culver and the Board. Complaint, ¶¶36-38.

The Plaintiffs allege that the Board and Culver had, and have, "a policy, procedure, practice and custom of failing to adequately train principals and personnel on the appropriate and correct procedures for apprehension, contacting parents of minors, conducting searches, avoiding profiling students on the basis of race, and preventing violations of the rights of students." Complaint, ¶ 40. The Plaintiffs allege that the Board and Culver further "had a custom of tolerating or acquiescing in the failure to adequately supervise, discipline its principals, and for failing to train . . . ." Complaint, ¶ 41. Finally, the Plaintiffs allege that, "The aforesaid actions of the Defendants were reckless, done with deliberate indifference, and disregard and substantial risk of violations of D.M."

_____

[1]Plaintiffs defined this search as a "strip search." Complaint, ¶ 31.

<u>Complaint</u>, ¶ 42.  Based on these allegations, the Plaintiffs bring twelve counts under 42 U.S.C. §§ 1981 and 1983, and state law.  The Plaintiffs bring the claims against Howard and Culver in their individual and official capacities, and the claims against the Board in their official capacities. <u>Complaint</u>, at 1-2.  The Defendants move to dismiss all these claims.

<u>ANALYSIS</u>

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. <u>Fed. R. Civ. P.</u> 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  <u>Fed. R. Civ. P.</u> 8(a)(2) & (d)(1).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests.  <u>George v. Smith</u>, 507 F.3d 605, 608 (7th Cir. 2007).  In this case,

Counts I, II, V, and XI state claims, but the rest of the Complaint should be dismissed.

COUNT I

A.    Individual Capacity

Count I alleges a claim under § 1983 against Howard individually for conducting an illegal search.  The search of a student in a public school is governed under a Fourth Amendment standard of reasonableness.  Safford Unified School Dist. No. 1 v. Redding, 557 U.S. 364, 129 S.Ct. 2633, 2639 (2009); New Jersey v. T.L.O., 469 U.S. 325, 337 (1985).  The standard of reasonableness requires the school official to have reasonable suspicion of wrongdoing, rather than probable cause, before conducting a search. T.L.O., 469 U.S. at 337-39.  The standard of reasonableness requires a two-step analysis:  first, the search must be justified at its inception; and second, the scope of the search must be reasonably related to the circumstances which justified the search in the first place.  T.L.O, 469 U.S. at 341-42.  To be justified at its inception, the facts and circumstances known to the school administrator at the time of the search must present a "moderate chance of finding evidence of wrongdoing."  Safford, 129 S.Ct. at 2639.

Based on the allegations, the facts and circumstances known to Howard did not present a moderate chance of a finding of wrongdoing.

Howard smelled cannabis in the room before D.M. arrived at school. The Defendants argue that the smell of cannabis made Howard's subsequent acts justified at its inception. The Court disagrees. Howard had no reason to associate the smell of cannabis with D.M. because D.M. was not even in the school building at the time, let alone in the particular classroom. Howard also allegedly had no reasonable cause for singling out D.M. for a search after he arrived in the classroom. As alleged, the facts and circumstances did not present Howard with a basis to believe that the search of D.M. would present a moderate change of a finding evidence of wrongdoing. Howard, therefore, lacked reasonable suspicion to search D.M. The Plaintiffs state a claim against Howard in her individual capacity for conducting an illegal search.

Howard argues that she is entitled to dismissal because she is entitled to qualified immunity in this case. Qualified immunity is an affirmative defense to a § 1983 claim against an individual in her individual capacity. A defendant is entitled to qualified immunity unless a clearly established precedent in existence at the time of the occurrence put the defendant on notice that her conduct violated the constitution. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Tun v. Whitticker, 398 F.3d 899, 901 (7th Cir. 2005).

Howard argues that she was not on notice that her actions violated the Fourth Amendment. The Court disagrees. The Supreme Court decisions in T.L.O. and Safford established that a school official must have reasonable suspicion before searching a student. According to the allegations, Howard had no reason to search D.M. Howard was on notice that she could not search D.M. without any reason. When the Complaint is read in the light most favorably to the Plaintiffs, Howard is not entitled to dismissal of Count I based on the affirmative defense of qualified immunity.

Howard argues that the Safford Court held that principals are entitled to qualified immunity in conducting searches. This is incorrect. The Safford Court held that the T.L.O. Opinion did not provide sufficient guidance on the scope of the search, not on the requirements of reasonable suspicion. Safford, 129 S.Ct. at 2643. Howard was on notice that she needed reasonable suspicion before searching D.M. According to the allegations, Howard did not have reasonable suspicion to search D.M. Howard is not entitled to qualified immunity based on the allegations in the Complaint.

B.    Official Capacity

The Plaintiffs also bring the claims in Count I against Howard in her official capacity. A suit against a governmental official in her official capacity is a suit against the governmental entity, in this case the District.

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). To state a claim against the District, the Plaintiffs must allege that Howard conducted the illegal search pursuant to a policy, practice or custom of the District, or that the action was taken by the person with final, policy making authority. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691 (1978). The Plaintiffs do not allege that the Board or Culver or the District had a policy, practice, and custom of conducting unreasonable searches. The Plaintiffs further do not allege that Howard had final policy making authority for the District with respect to student searches. Count I, therefore, fails to state a claim against the District.

The Plaintiffs allege that the Board and Culver had a policy, practice and custom of failing to train and supervise principals such as Howard. Complaint, ¶ 40-41. The § 1983 claims for failure to supervise and train are set forth in Counts V and XI, not Count I. Count I concerns the alleged illegal search itself. To state a claim against the District, the Complaint must allege that the District had a policy, practice, or custom of conducting illegal searches, or that Howard had final policy making authority for the District regarding student searches. Count I does not make any of these allegations. Count I only states a claim against Howard in her individual

capacity for conducting an illegal search in violation of D.M.'s constitutional

rights.

COUNT II

A.    Individual Capacity

Counts II alleges a claim against Howard individually under 42 U.S.C.

§ 1981.   Section 1981 states:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall
have the same right in every State and Territory to make and
enforce contracts, to sue, be parties, give evidence, and to the
full and equal benefit of all laws and proceedings for the
security of persons and property as is enjoyed by white
citizens, and shall be subject to like punishment, pains,
penalties, taxes, licenses, and exactions of every kind, and to
no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce
contracts" includes the making, performance, modification, and
termination of contracts, and the enjoyment of all benefits,
privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against
impairment by nongovernmental discrimination and impairment
under color of State law.

42 U.S.C. § 1981.  To assert a claim under § 1981, the plaintiff must allege

(1) he is a member of a racial minority; (2) the defendant had an intent to

discriminate on the basis of race; and (3) the discrimination involved one of

the activities enumerated in the statute. Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). The Seventh Circuit has not directly addressed whether alleging a racially motivated illegal search states a claim under § 1981. Several other Circuits, however, have held that alleging a racially motivated illegal arrest or search states a claim under § 1981 as a denial of equal benefit of all laws and proceedings for the security of persons and property. Chapman v. Higbee Co., 319 F.3d 825, 829-30 (6th Cir. 2003); Phillip v. University of Rochester, 316 F.3d 291, 294 (2d Cir. 2003); Adams ex rel. Harris v. Boy Scouts of America-Chickasaw Council, 271 F.3d 769, 777 (8th Cir. 2001); Alexis v. McDonald's Restaurants of Massachusetts, Inc., 67 F.3d 341, 348 (1st Cir. 1995); Coleman v. Franklin Parish School Bd., 702 F.2d 74, 77 (5th Cir. 1983); Mahone v. Waddle, 564 F.2d 1018, 1024-25 (3d Cir. 1977); see also Evans v. McKay, 869 F.2d 1341, 1344-45 (9th Cir. 1989). Given this authority and the plain language of § 1981, the Court agrees that § 1981 authorizes claims for denial of equal benefits under law for racially discriminatory illegal searches and seizures.[2]

The Plaintiffs allege that Howard conducted a racially motivated illegal search of D.M. The Plaintiffs allege that Howard picked out one of

_____

[2]Some Seventh Circuit cases indirectly indicate a recognition of an equal benefits claim under § 1981. See e.g., Palmer v. Board of Educ. Of Community Unit School Dist. 201-U, Will County, Illinois, 46 F.3d 682, 687 (7th Cir. 1995). See Stewart v. Harrah's Illinois Corp., 2000 WL 988193, at *17 n. 16 (N.D. Ill. 2000) for a discussion of Seventh Circuit authority.

two African American students in a class of thirty without any reason and conducted an intrusive search of his person. These allegations, if true, state a plausible claim that Howard intentionally denied D.M. of his right to equal benefit under the law because of his race. Count II states a claim against Howard individually.

The Defendants rely on Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006), for the proposition that § 1981 claims are limited to discriminatory impairment of contractual relationships. This Defendants are incorrect. The McDonald opinion concerned a claim brought under the right "to make and enforce contracts" language in § 1981. The Ninth Circuit Court of Appeals held that a person could assert a claim for impairment of contract even if the person was not a party to the contract. McDonald, 546 U.S. at 474. The Supreme Court reversed the Ninth Circuit and held that a plaintiff asserting a claim under the impairment of contract clause in § 1981 must allege that he was a party to an existing or prospective contractual relationship that was impaired.[3] The Supreme Court relied on the plain language of § 1981 in reaching this decision. McDonald, 546 U.S. at 479.

---

[3]The McDonald Court made no comment on whether a plaintiff could state a claim as a third party beneficiary of an existing or prospective contract. McDonald, 546 U.S. at 476, n.3.

The decision in McDonald only addresses claims brought under the right to make and enforce contract clause of § 1981. The McDonald decision does not preclude a claim under any of the other clause in § 1981. In fact, the McDonald opinion directs the Court to follow the plain language of § 1981. That plain language states that all citizens are entitled "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." That plain language authorizes a claim when a defendant denies a person such equal benefits because of his race. The Plaintiffs allege that Howard did just that to D.M. Count II states a claim.

B.    Official Capacity

Counts II fails to state claims against Howard in her official capacity. Again, an official capacity claim against a municipal official is a claim against the municipality. Graham, 473 U.S. at 165-66. A municipality is liable under § 1981 only if the illegal act was done pursuant to a municipal policy, practice or custom, or by the person with final policy making authority. Jett v. Dallas Independent School Dist., 491 U.S. 701, 731-32 (1989). The Plaintiffs do not allege that the District had a policy, practice, or custom of conducting racially discriminatory illegal searches. Counts II, therefore, fails to state an official capacity claim.

<u>COUNTS III AND IV</u>

A.    <u>Individual Capacity</u>

Count III and IV allege claims against Culver for violating D.M.'s constitutional rights as a result of the alleged illegal search conducted by Howard.  Count III and IV fail to state claims against Culver in his individual capacity.  An individual must have some personal involvement in the illegal act to be liable under §§ 1981 and 1983.  <u>Palmer v. Marion County</u>, 327 F.3d 588, 593-94 (7th Cir. 2003); <u>Musikiwamba v. ESSI, Inc.</u>, 760 F.2d 740, 753 (7th Cir. 1985).  The Plaintiffs must allege that he either participated in the discriminatory illegal search or knew that Howard was going to search D.M. illegally and allowed Howard to proceed.  <u>Id.</u>  The Plaintiffs do not allege that Culver participated in the illegal search, or that Culver knew that Howard was going to search D.M. illegally and permitted her to do so. Without allegations of such personal involvement, the Plaintiffs fail to state claims against Culver individually in Count III and IV.

B.    <u>Official Capacity</u>

Counts III and IV also fail to state claims against Culver in his official capacity.  Again, an official capacity claim against a municipal official is a claim against the municipality.  <u>Graham</u>, 473 U.S. at 165-66.  A municipality is liable under §§ 1981 and1983 only if the illegal act was done pursuant to a municipal policy, practice or custom, or by the person with

final policy making authority. <u>Jett</u>, 491 U.S. at 731-32; <u>Monell</u>, 436 U.S. at 691.  The Plaintiffs do not allege that the District had a policy, practice, or custom of conducting racially discriminatory illegal searches.  Counts III and IV fail to state official capacity claims.

<u>COUNTS V AND XI</u>

Counts V and XI allege the same claims against Culver and the Board respectively.  These Counts allege that Culver and the Board had,

> a policy or procedure or practice and custom of tolerating or acquiescing in its personnel inadequate investigation, failing to adequately supervise and discipline its personnel, or failing to train its personnel on appropriate and proper methods of investigation, recognition, or correct procedures for apprehension, contacting parents or searches, and preventing violations of students' rights.

<u>Complaint</u>, Count V ¶ 44, Count XI ¶ 44.  As a result of these alleged actions, Culver and the Board maintained a "custom or practice of allowing its school personnel to create dangers to students without taking appropriate measures to protect them."  <u>Complaint</u>, Count V ¶ 45 A, Count XI ¶ 45 A.   These Counts also allege that the Board and Culver failed to train and supervise personnel in the proper procedures to investigative student activity, to avoid creating dangers for students and to protect students.  <u>Complaint</u>, Count V ¶¶ 45 B & C, Count XI ¶¶ 45 B & C. These Counts further allege that the Board and Culver, "intentionally, knowingly, recklessly or with deliberate indifference promulgated or

acquiesced in the aforementioned policies . . . ." Complaint, Count V ¶ 46,

Count XI ¶ 46.   When read favorably to the Plaintiffs, these allegations do

not state a claim for failure to protect, but do state a claim for failure to

supervise and train.

A.    Failure to Protect from Danger

Generally, a governmental entity has no duty to protect individuals

from private injury, in this case from the alleged unconstitutional conduct of

Howard.  DeShaney v. Winnebago County Department of Social Services,

489 U.S. 189, 195 (1989).  A governmental entity, however, may be liable

for placing an individual in a dangerous situation under two conditions:

(1) the governmental entity has a person within its custody, such as a

prisoner or involuntarily committed person; or (2) the governmental entity

affirmatively places the individual in a dangerous situation that the

individual would not otherwise face.  Stevens v. Umsted, 131 F.3d 697, 701

(7th Cir. 1997).

The Plaintiffs do not allege either exception to the general rule.  The

Plaintiffs allege that D.M. was a student at the Academy, nothing more.

Schools do not take school children into custody like prisoners and do not

have a general duty to protect them from private wrongdoing.  Id. at 703;

S.J. v. Perspectives Charter School, 685 F.Supp.2d 847, 856 (N.D. Ill.

2010); Werth v. Board of Directors of Public Schools of City of Milwaukee, 472 F.Supp.2d 1113, 1124 (E.D. Wis. 2007).

The Plaintiffs further do not allege that the Board or Culver affirmatively caused Howard to search D.M. illegally. To state a claim for placing D.M. in a dangerous situation, the Plaintiffs must allege that the Board and Culver took some affirmative action to place D.M. in a dangerous situation, that their actions were the proximate cause of the injury, and that their actions shocked the conscience. King ex rel. King v. East St. Louis School Dist., 189, 495 F.3d 812, 818 (7th Cir. 2007). The Plaintiffs allege that the Board and Culver failed to act, that they tolerated or acquiesced in the situation. The Plaintiffs do not allege that the Board and Culver affirmatively forced D.M. into a dangerous situation. Affirmative action to place the person in danger is required to state a claim. Werth, 472 F.Supp.2d at 1124; Jennifer Y v. Velazquez, 434 F.Supp.2d 570, 579 (N.D. Ill. 2006). The Plaintiff, therefore, fails to state a claim against Culver or the Board for failing to protect D.M. from Howard's alleged illegal conduct.

B.     Failure to Train or Supervise

To state a § 1983 claim for failure to train or supervise, the Plaintiffs must allege that the Board and Culver acted with deliberate indifference to students' constitutional rights. City of Canton, Ohio v. Harris, 489 U.S. 378,

389 (1989); Cornfield by Lewis v. Consolidated High School Dist. No. 230,

991 F.2d 1316, 1327 (7th Cir. 1993).   Deliberate indifference in this context

means a conscious choice not to train or supervise employees made

recklessly or intentionally.  Harris, 489 U.S. at 389.  The state official either

must know that the decision not to train or supervise will likely result in a

constitutional violation, or that the risk of a constitutional violation is so

obvious that the officials must have been aware of the risk and chose not to

train or supervise anyway.  Harris, 489 U.S. at 390; Cornfield, 991 F.2d at

1327.  Such an obvious risk may be if shown pattern of constitutional

violations in the past put the state official on notice of a problem and a

need for training or supervision.  Cornfield, 991 F.2d at 1327.  To prevail,

the plaintiff must effectively show that the defendants recklessly and

consciously chose not to train people adequately.  Harris, 489 U.S., at 390.

    In this case, the allegations are thin, but they are sufficient to provide

the Defendants with notice of the claim.  The Plaintiffs allege that Culver

and the Board acted with deliberate indifference in establishing a District

policy not to train principals properly even though the lack of training would

likely lead to violations of students' rights.  If true, the allegations plausibly

state a basis for liability.  Counts V and XI state a claim for failure to train

and supervise.

### 1.  Individual Capacity

As with the other § 1983 claims, the Plaintiffs must allege Culver's personal involvement to state a claim against him in his individual capacity. In this case, the Plaintiffs allege that Culver was responsible for supervising and training Howard.  <u>Complaint</u>, Count V ¶ 43.  Such direct responsibility, if true, may plausibly be sufficient to impose personal liability on Culver. Count V, thus, states a claim against Culver in his individual capacity.

### 2.  Official Capacity

The Plaintiffs allege that the decision not to train or supervise properly was a policy, custom or practice.  <u>Complaint</u>, Count V ¶ 42, 46, Count XI ¶ 42, 46.  The allegations are sufficient to state a claim against the District.  Counts V and XI state claims against the District for failure to train and supervise.

<u>COUNTS VI AND XII</u>

Counts VI and XII allege claims against Culver and the Board under § 1981 based on the same allegations that underlie Counts V and XI. Counts VI and XII incorporate by reference paragraph 44 of Counts V and XI, quoted above.  The Counts allege that Culver and the Board acted with deliberate indifference, intentionally and recklessly to allow principals to violate students' rights.  Counts VI and XII, however, do not allege that Culver or Board intended to discriminate on the basis of race.  Such intent

is a necessary element of a § 1981 claim.  <u>Morris</u>, 89 F.3d at 413.  These Counts, therefore, do not state claims under § 1981.

The Court recognizes that Counts VI and XII allege that, as a result of Culver and the Board's failure to train and supervise, D.M. was deprived of, "the right not to be profiled because of his race."  <u>Complaint</u>, Count VI ¶ 45 D., Count XII ¶ 45 D.  The Complaint, however, does not allege that Culver and the Board intended this outcome or any other racial discrimination.[4]  In the absence of allegations that Culver and the Board were motivated by an intent to discriminate based on race, Counts VI and XII fail to state a claim.

<u>COUNT VII</u>

Count VII asserts a supplemental state law claim for intentional infliction of emotional distress against Howard.  Howard moves to dismiss on the ground of absolute immunity under the Illinois Tort Immunity Act.  745 ILCS 10/2-201.  Section 2-201 states,

> § 2-201. Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201.  This immunity extends to both negligent and willful

---

[4]The facts alleged in Count II support an inference that Howard acted with an intent to discriminate based on race because she allegedly singled out D.M. for a search without any reason when he was one of only two African Americans in a class of thirty students.  The Plaintiffs make no such specific allegations about Culver or the Board that would plausibly allow a fact finder to infer intent to discriminate based on race.

and wanton misconduct.  In re Chicago Flood Litigation, 176 Ill.2d 179, 196, 680 N.E.2d 265, 273 (Ill. 1997).

Howard's alleged search of D.M. falls within this Section's protections.  The Plaintiffs argue that Howard may have been performing a ministerial act rather than exercising her discretion when she searched D.M.  Memorandum of Law in Support of Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Complaint (d/e 15), at 7.  The Court disagrees.  The Plaintiffs' allegations are clear.  Howard was the principal of the Academy with responsibility for the administration of student discipline.  Complaint, ¶ 15.  She pulled D.M. out of class and conducted an intrusive search.  Howard had no reasonable cause to focus on D.M.  Complaint, ¶ 28.  She further elected not to search any of the twenty-nine other students in the classroom.  These allegations, if true, would establish that Howard was not engaged in a ministerial act.  Rather, she abused her discretion as principal in taking D.M. out of class and searching him.  Such an abuse of discretionary authority is absolutely immune under § 2-201 from any claim based on Illinois law.  Count VII fails to state a claim.

## COUNTS VIII, IX, AND X

Counts VIII, IX, and X allege claims for violation of Article I §§ 2 and 6 of the Illinois Constitution.  The Defendants argue that Plaintiffs have no direct cause of action for violations of the Illinois Constitution.  The Illinois

Constitution does not expressly authorize a cause of action for constitutional violations, and the Illinois Supreme Court has not addressed whether an implied cause of action exists. This Court, thus, must predict how the Illinois Supreme Court would rule on the issue. Allen v. Transamerica Ins. Co., 128 F.3d 462, 466 (7th Cir. 1997).

The Illinois Supreme Court considers the following factors in deciding whether to imply a private right of action into a statute: (1) the plaintiff is a member of the class for whose benefit the statute was created; (2) the plaintiff's injury is one that the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) private right of action is necessary to provide an adequate remedy for violations of the statute. Metzger v. DeRosa, 209 Ill.2d 30, 36, 805 N.E.2d 1165, 1169 (Ill. 2004). The Court believes that the Illinois Supreme Court would apply these principles in determining whether to imply a cause on action into the Illinois Constitution.

In this case, a right of action is not necessary because an injured party has adequate remedies available through federal law and state common law actions. Several District Courts that have considered the matter have reached the same conclusion. See Hawkins v. City of Champaign, Illinois, 2011 WL 2446312, at *5 (C.D. Ill.), report and recommendation adopted, 2011 WL 2456626 (C.D. Ill. 2011); S.J., 685

F.Supp.2d at 862; <u>Amati v. City of Woodstock, Illinois</u>, 829 F.Supp. 998, 1006-07 (N.D. Ill. 1993); <u>Woods v. Clay</u>, 2005 WL 43239, *24 (N.D. Ill. 2005); <u>Tidwell v. Teneyuque</u>, 2001 WL 321052, *3 (N.D. Ill. 2001); <u>Richard v. Lukensmeyer</u>, 199 WL 261835, *3-4 (N.D. Ill. 1999); <u>Ingram v. Jones</u>, 1995 WL 745849, *4 (N.D. Ill. 1995); <u>see</u> <u>also</u> <u>Pantone v. Demos</u>, 59 Ill.App.3d 328, 332, 375 N.E.2d 480, 483 (1st Dist. 1978) (Article I § 12 of the Illinois Constitution does not provide a new private remedy so long as a remedy for the alleged wrong already exists). <u>But see</u> <u>White v. O'Leary</u>, 742 F.Supp. 990, 992 (N.D. Ill. 1990). This Court, therefore, predicts that the Illinois Supreme Court would conclude that the Plaintiffs have no implied right of action under the Illinois Constitution. Counts VIII, IX, and X fail to state a claim.

WHEREFORE, this Court recommends that Defendants' Motion to Dismiss Plaintiffs' Complaint (d/e 12) should be ALLOWED in part and DENIED in part. The Motion should be denied with respect to:

A.    The individual capacity claim against Defendant Howard in Count I;

B.    The individual capacity claim against Defendant Howard in Count II;

C.    The individual capacity claim against Defendant Culver in Count V for failure to train and supervise;

D.    The official capacity claim against Defendant Culver in Count V for failure to train and supervise; and

E.    The official capacity claim against the Board in Count XI for failure to

train and supervise.

The remainder of the Motion should be allowed, and all other claims should

be dismissed.

The parties are advised that any objection to this Report and

Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after service of an ECF copy of this Report and

Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file a timely objection

will constitute a waiver of objections on appeal.  See Video Views, Inc. v.

Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.


ENTER:    February 24, 2012


_____ s/ Byron G. Cudmore _____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE