**E-FILED**
Friday, 12 July, 2013  04:33:30 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

JOHN DOE and JANE DOE, as     )
Parents and Next Friends of       )
D.M., a Minor,                         )
                                    )
           Plaintiffs,        )
                                    )
               v.             )      No. 11-CV-3355
                                    )
CHAMPAIGN COMMUNITY UNIT   )
4 SCHOOL DISTRICT, et al.,      )
                                    )
           Defendants.      )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Motion to Dismiss) (d/e 29). For the reasons that follow, the motion is GRANTED.

## I.  BACKGROUND

On September 20, 2011, Plaintiffs filed a 12-count Complaint (d/e 1) against the  Champaign Community Unit 4 School District (District);

Rhonda Howard, the principal of Academic Academy, in her individual and official capacities; Arthur Culver, the Superintendent of the District, in his individual and official capacities; and members of the District's Board of Education Sue Grey, Stig Lanesskog, Tom Lockman, Greg Novak, Jamar Brown, Kristine Chalifoux, and David Tomlinson in their official capacities.  Novack has died during the pendency of this case. The Court dismissed several of Plaintiffs' claims but gave Plaintiffs leave to replead.

Plaintiffs have filed a First Amended Complaint (Amended Complaint) that names the same Defendants.  The allegations of the Amended Complaint are similar to those in the original Complaint and state as follows.

At the time of the incident in question, D.M. was a 15-year old male enrolled at Academic Academy in Champaign, Illinois.  On January 21, 2011, Principal Howard entered D.M.'s classroom prior to D.M. arriving at school.  Principal Howard detected the odor of cannabis and then left the classroom.  Later, D.M. arrived at school and took his seat

in the classroom.  About 30 students were present at the time.  D.M. was one of only two African-American students in the classroom.

After D.M. had taken his seat, Principal Howard entered the classroom, removed D.M. from the classroom, and took D.M. to her office.  There, Principal Howard searched D.M.'s coat and backpack.  Principal Howard then required D.M. to remove his shirt, unbutton his pants, remove his belt, remove his shoes, and partially disrobe.  The Amended Complaint refers to this as a "strip search."  Principal Howard did not find any contraband on D.M. during the search.  Principal Howard did not contact D.M.'s parents prior to conducting the search.

D.M. then returned to his classroom.  Principal Howard did not conduct a search of any other student in the classroom or of any other student's belongings.

According to the Amended Complaint, Principal Howard did not have reasonable cause to conduct this "strip search" of D.M.  Principal Howard's actions were taken in her official capacity as Principal, pursuant to the policies and direction and under the supervision of

Superintendent Culver and the School Board.

The Amended Complaint further alleges that the School Board and Superintendent Culver have a policy, procedure, or practice and custom of failing to adequately train personnel on the appropriate and correct procedures for the apprehension of students, contacting parents of minors, conducting searches, avoiding the profiling of students on the basis of race, and preventing violations of students' rights. The Amended Complaint further alleges that the School Board and Superintendent Culver have a custom of tolerating or acquiescing in the failure to adequately supervise and discipline its principals. The Amended Complaint further alleges that the School Board and Superintendent Culver failed to train its personnel on the appropriate procedures for the apprehension of students, contacting parents of minors, the conducting of searches, avoiding the profiling of students on the basis of race, and preventing violations of the rights of its students. Finally, the Amended Complaint alleges that the aforesaid actions of Defendants were reckless, done with deliberate indifference, disregard, and substantial risk of

violations of D.M's rights.

## II. ANALYSIS

Defendants have filed their Motion to Dismiss Plaintiffs' First Amended Complaint and a Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Defendants' Memorandum in Support).  In the Motion to Dismiss, Defendants contended that the official capacity claims against Principal Howard in Counts I and II, the individual and official capacity claims against Superintendent Culver in Counts III and IV, and the Failure to Train claims against Superintendent Culver and the School Board in Counts V and XI should be dismissed.

A.  Legal Standard

Under Rule 12(b)(6), dismissal is proper where a complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  That statement

must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."  EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007).  While detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965, 167 L. Ed. 2d at 940.  Conclusory allegations are "not entitled to be assumed true."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868, 885 (2009) (citing Twombly, 550 U.S. 544 (2007)).  "In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party."  In re marchFIRST Inc.,

589 F.3d 901, 904 (7th Cir. 2009) (citing <u>Tamayo</u>, 526 F.3d at 1081).

A.  Official Capacity Claims Against Principal Howard in Counts I and II

Counts I and II allege claims under 42 U.S.C. §§ 1983 and 1981, respectively, against Principal Howard in both her individual and official capacities.  Count I alleges that the School Board, Superintendent Culver, or Unit 4 had a policy, practice or custom of conducting unreasonable searches.  Count II alleges that Unit 4 had a policy, practice, or custom of conducting racially discriminatory illegal searches. Counts I and II both allege that Principal Howard exercised final policymaking authority for Unit 4 with respect to student searches. Defendants seek dismissal of the official capacity claims in Counts I and II.

A suit against a governmental official in her official capacity is a suit against the governmental entity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).  Here, the governmental entity is the District.  To establish municipal liability, Plaintiffs "must show the existence of an 'official policy' or other governmental custom that not only causes but is

the 'moving force' behind the deprivation of constitutional rights."
Teesdale v. City of Chicago, 690 F.3d 829, 833 (7th Cir. 2012)
(quotation omitted); Monell v. Department of Social Services, 436 U.S.
658, 691 (1978).  "Our case law establishes that unconstitutional policies
or customs take three forms: (1) an express policy that causes a
constitutional deprivation when enforced; (2) a widespread practice, that,
although unauthorized, is so permanent and well-settled that it
constitutes a "custom or usage" with the force of law; or (3) an allegation
that a person with final policymaking authority caused the injury."
Chortek v. City of Milwaukee, 356 F.3d 740, 748 (7th Cir. 2004) (citing
Rasche v. Vill. of Beecher, 336 F.3d 588, 597 (7th Cir. 2003).  This
same standard applies to official capacity claims brought under § 1981.
See Jett v. Dallas Independent School Dist., 491 U.S. 701, 731 (1989);
see also Alexander v. City of Milwaukee, 474 F.3d 437, 448 (7th Cir.
2007).

Here, Plaintiffs have not identified an express policy of the School
Board or Unit 4 that could have caused D.M.'s constitutional

deprivation.  Therefore, Plaintiffs have not sufficiently alleged an official capacity claim based on an express policy in Counts I or II.

Likewise, Plaintiffs have failed to allege facts that permit an inference there was a widespread practice or custom of conducting unreasonable or racially discriminatory searches of students.  "The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, in either event adopting, the misconduct of subordinate officers."  Jackson v. Marion County, 66 F.3d 151, 152 (7th Cir. 1995).  When using this method of proof, "a single act of misconduct will not suffice; for it is the series that lays the premise of the system of inference."  Id. (citing Cornfield by Lewis v. Consolidated High School District No. 230, 991 F.2d 1316, 1326-27 (7th Cir. 1993)); see also Levin v. Board of Educ. of the City of Chicago, 470 F.Supp. 2d 835, 843 (N.D. Ill. 2007) (dismissing § 1983 claim

because two instances of unconstitutional conduct does not suggest a widespread, enduring practice that violates constitutional rights in a systemic manner.) (internal quotation omitted); Hale v. Pace, 2011 WL 1303369, at *8 (N.D. Ill. March 31, 2011) ("to allege an official policy, plaintiffs must plead 'specific facts that demonstrate the actual existence of an illegal municipal policy that goes beyond a single alleged incident of wrongdoing.'") (emphasis in original) (internal citation omitted).  Here, Plaintiffs have only alleged a single act of misconduct, i.e., the search of D.M.  This is not sufficient to allege a widespread practice.

Plaintiffs cite Davis v. Carter, 452 F.3d 686 (7th Cir. 2006), alleging it is "[t]he most poignant description of the lack of the requirement for multiple violations."  d/e 32 at p. 3.  Davis is inapplicable to the case before this Court.  In Davis, the issue was whether Cook County had a widespread practice or custom of inordinate delay in providing methadone treatment to inmates.  452 F. 3d at 692. Cook County argued that the plaintiff could not establish a widespread practice because she failed to identify any other incarcerated individuals

who suffered from a lack of methadone treatment.  Id. at 695.  The court

stated that "the plaintiff [] was not required to show that Cook County's

alleged repeated pattern of delay (i.e., its alleged past 'bad acts') actually

caused pain and suffering to other inmates in need of medical

intervention ( i.e., repeated past injuries)."  (Citation omitted).  Instead,

it was enough to provide competent evidence tending to show that Cook

County routinely failed to provide methadone to inmates for several

days."  Id.  The Davis court held that "it is enough that a plaintiff

present competent evidence tending to show a general pattern of

repeated behavior (i.e., something more than a mere isolated event)."  Id

at 694 (Emphasis added.).  In Davis, the plaintiff had several statements

from prison employees asserting that it was customary for delays to occur

in the provision of methadone to prisoners.  Here, Plaintiffs allege merely

the isolated search by Principle Howard.  Although the court in Davis

held that the plaintiff did not need to show several instances of harm

occurring from the defendant's conduct, the plaintiff was required to

show "competent evidence tending to show that Cook County routinely

failed to provide methadone to inmates for several days." <u>Id</u> at 695.  The critical aspect that the court considered was not that actual harm followed the previous actions of the defendant, but that the previous actions were of the same character as the action causing the harm in <u>Davis</u>.  In the present case, Plaintiffs fail to allege any conduct on the behalf of the Defendant which would imply a widespread practice of bad conduct similar in character to that complained of in the instant case.  Therefore, Plaintiffs have not alleged an official capacity claim in Counts I or II based upon a widespread practice or custom of conducting unreasonable or racially discriminatory searches.

An exception to the general rule that a single act of wrongdoing cannot be the basis for an official capacity claim under <u>Monell</u> does exist.  A single act can constitute municipal policy within the meaning of § 1983 "when the act complained of is accomplished by a defendant with final policymaking authority." <u>Looper Maintenance Service Inc. v. City of Indianapolis</u>, 197 F.3d 908, 913 (7th Cir. 1999).  However, Plaintiffs' boilerplate allegations in Counts I and II that Principal Howard had final

policy making authority are devoid of any validating facts and are

conclusory.

In Count I, Plaintiffs alleged that Principal Howard "exercised final

policy-making authority for Unit 4 with respect to student searches."  In

Count II, Plaintiffs alleged that "Unit 4 had a policy, practice, or custom

of conducting racially discriminatory searches, or imbued [Principal]

Howard with the final decision-making authority to do so."  However, in

McTigue v. City of Chicago, the Seventh Circuit held that "[b]oilerplate

allegations of a municipal policy, entirely lacking in any factual support

that a [municipal] policy does exist, are insufficient" and that "the

absence of any facts at all to support plaintiff's claim renders the

allegations mere legal conclusions of section 1983 liability devoid of any

well-pleaded facts."  60 F.3d 381, 382-83 (7th Cir. 1995); citing Baxter

by Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 736 (7th Cir. 1994);

see also Horwitz v. Board of Education of Avoca School Dist. No. 37,

260 F.3d 602, 619 (7th Cir. 2001) (where the court stated the plaintiff

"has not provided us with any basis to conclude, beyond her own bare

allegations, that [the principal, superintendent, or president of the school board] is a final policymaker").

Moreover, in Illinois, a principal is not vested with final policy making authority.  See Cornfield, 991 F.2d at 1326 (stating "[n]othing in the [Illinois] School Code allows us to infer that a disciplinary dean has been delegated policymaking authority").  Plaintiffs have not provided the Court with any basis, other than their bare allegations, to plausibly suggest that Principal Howard was delegated final policy making authority with regard to student searches.

B.  Counts III and IV Against Superintendent Culver

Counts III and IV respectively allege claims under 42 U.S.C. §§ 1983 and 1981.  Both counts are brought against Superintendent Culver in his individual and official capacities.

Count III alleges that the School Board, Superintendent Culver, or Unit 4 had a policy practice and custom of conducting unreasonable searches.  Count IV alleges that Unit 4 had a policy, practice, or custom of conducting racially discriminatory illegal searches.  Counts IV alleges that the District "deferred to Culver to make the final decision making."

1. Official Capacity Claims

The official capacity claims against Superintendent Culver do not survive for the same reasons expressed above with regard to the official capacity claims against Principal Howard.  Like the official capacity claims against Principal Howard in Counts I and II, Counts III and IV do not allege an express policy.  Moreover, the allegations fall short of alleging a widespread practice because Plaintiffs only allege a single act of misconduct.  See Jackson, 66 F.3d at 152.  Further, in Count III, Plaintiff alleges that Principal Howard, not Superintendent Culver, exercised final policy making authority for Unit 4.  Therefore, Count III, which is brought against Superintendent Culver, does not even allege Superintendent Culver had final policy making authority.  Finally, the allegation in Count IV that Unit 4 "deferred to Culver to make the final decision making" is devoid of any facts to support the assertion.  See McTigue, at 384-85 ("boilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient").

2.  Individual Capacity

Defendants maintain Counts III and IV of the Amended Complaint do not state a claim against Superintendent Culver in his individual capacity because there are no allegations that Superintendent Culver participated in the search of D.M. or that Superintendent Culver knew Principal Howard was going to search D.M. illegally and allowed Principal Howard to proceed.  Defendants are correct.

To the extent Plaintiffs attempt to bring claims against Superintendent Culver in his individual capacity, Plaintiffs have failed to state a claim because they do not allege Superintendent Culver had any personal involvement in the illegal act.  See Palmer v. Marion County, 327 F.3d 588, 593-94 (7th Cir. 2003) (stating that individual liability under § 1983 can only be based on a finding that defendant caused the deprivation at issue); Musikiwamba v. ESSI, Inc., 760 F.2d 740, 753 (7th Cir. 1985) (stating that personal liability cannot be imposed on an individual based on violation of § 1981 unless the individual is alleged to have participated in the actual discrimination against the plaintiff). Plaintiffs have not alleged that Superintendent Culver participated in the alleged discriminatory illegal search or that he knew Principal Howard

was going to perform an illegal search of D.M. and allowed Principal

Howard to proceed.  Therefore, Superintendent Culver cannot be held

individually liable.

C.  Failure to Train Claims in Counts V and XI

    Counts V and XI allege the same claims under § 1983 against

Superintendent Culver and the Board respectively.  Specifically, these

Counts allege that both Culver and the Board had

> a policy or procedure or practice and custom of tolerating or
> acquiescing in its personnel inadequate investigation, failing
> to adequately supervise and discipline its personnel, or failing
> to train its personnel on appropriate and proper methods of
> investigation, recognition, or correct procedures for
> apprehension, contacting parents or searches, and preventing
> violations of students' rights.

These Counts further allege that the policies and procedures that resulted

in a violation of D.M.'s rights included:  (1) a custom or practice of

allowing school personnel to create dangers to students without taking

appropriate remedial measures to protect them; (2) failing to educate and

train its school personnel in proper apprehension, protection or custody,

recognition, investigative or safety procedures, searches, and contacting

parents; and (3) failing to train and educate its school personnel on

proper methods to avoid creating dangers and failing to protect students.
Finally, these counts respectively allege that Superintendent Culver and
the Board "intentionally, knowingly, recklessly or with deliberate
indifference promulgated or acquiesced in the aforementioned policies,
procedures, practices or customs that caused, aided or failed to prevent
the violations and deprivations of D.M.'s rights."

"An allegation of a 'failure to train' is available only in limited
circumstances." Cornfield, 991 F.2d at 1327. To prevail on such a
claim, a plaintiff must show that a school district's "failure to train its
employees in a relevant respect evidences a 'deliberate indifference'" to
the rights of students. Id. (quoting City of Canton v. Harris, 489 U.S.
378, 389 (1989)).

Like the case sub judice, Cornfield involved the strip search of a
high school student who was suspected of possessing contraband. Id. at
1319. In Cornfield, the teachers who conducted the search sought
parental approval prior to proceeding, but were denied permission by the
plaintiff's mother. Id. The teachers proceeded with the disputed search
over the mother's objections. Id.

The Seventh Circuit recognized that a municipality may be held accountable if it failed "to train its employees with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face. Id. at 1327. The court found that "[g]iven the nebulous standards governing student searches, school districts and school district administrators cannot be held accountable on this ground because the particular constitutional duty at issue is not clear." Id.

Alternatively, the court stated that "municipal liability would be proper for a failure to train when the need is not necessarily obvious from the outset, but the pattern or frequency of constitutional violations would put the municipality on notice that its employees' responses to a recurring situation are insufficient to protect the constitutional rights involved. Id. However, the court concluded the two reported incidents of strip searching fell short of a pattern of violations that was sufficient to put the school board on notice of potential harm to students. Id.

In S.J v. Perspectives Charter Sch., 685 F. Supp. 2d 847 (N.D. Ill. 2010), the court dismissed a failure to train claim in a case similar to the case sub judice. The S.J. court discussed the Seventh Circuit's holding in

<u>Cornfield</u> and stated the following:

> S.J. alleges that "said failure to train was done with deliberate indifference," arguing that "[t]he need for training employees on the legality of student strip searches is so obvious, and the inadequacy is so extremely likely to result in a violation of constitutional rights, that a failure to train is evidence of deliberate indifference to the rights of students." <u>See</u> Response Br. at p. 6-7. The Seventh Circuit rejected this argument in <u>Cornfield</u>, however, finding that "[g]iven the nebulous standards governing student searches, school districts and school district administrators cannot be held accountable on this [failure to train] ground because the particular constitutional duty at issue is not clear." 991 F.2d at 1327. In <u>Cornfield</u>, the plaintiff "[did] not state[ ] a claim that establishes deliberate indifference by District 230" merely by citing two reported incidents of strip searches, and S.J. only cites one incident. <u>See Cornfield</u>, 991 F.2d at 1327.

<u>S.J.</u>, 685 F. Supp. 2d at 858. <u>See also</u> <u>Ibanez v. Velasco</u>, 1997 WL 467286, at *3 (N.D. Ill. 1997) (A failure to train case where the court stated that "plaintiff's allegations of constitutional violations that arise out of only a single incident are insufficient to show deliberate indifference by [the defendant] to potential constitutional violations in the absence of any allegations of previous such incidents"). Likewise, Plaintiffs in this case have failed to state a claim that establishes deliberate indifference by citing only this single incident of an alleged

constitutional violation.

## CONCLUSION

Therefore, Defendants' Motion to Dismiss the First Amended
Complaint (d/e 29) is GRANTED.  The official capacity claims against
Principal Howard in Counts I and II, the official and individual capacity
claims against Superintendent Culver in Counts III and IV, and the
failure to train claims against Superintendent Culver and the School
Board in Counts V and XI are DISMISSED.  Plaintiffs are given leave to
file a Second Amended Complaint by August 9, 2013.  Otherwise, this
case will proceed on Counts I and II against Principal Howard in her
individual capacity.  Plaintiffs are reminded that a Second Amended
Complaint will supersede all prior complaints filed with this court.  See
St. John's United Church of Christ v. City of Chicago, 401 F. Supp. 2d
887, 897 (N.D. Ill. 2005) (the Second Amended Complaint will
supersede the Amended Complaint and any objections to the latter will
be moot); see also Fells v. City of Milwaukee Police Dep't, 2009 U.S.
Dist. LEXIS 88085 (E.D. Wis. Sept. 24, 2009) (If plaintiff files an
amended complaint, he should be aware that it will supersede all prior

complaints. (citations omitted)).  Therefore, if Plaintiffs file a Second

Amended Complaint, the counts should be numbered consecutively,

instead of numbered to match the count numbers provided in the

original complaint.  This case is REFERRED back to Judge Cudmore for

further pre-trial proceedings.

IT IS THEREFORE SO ORDERED.

ENTERED: July 12, 2013.

                     FOR THE COURT:

                                       Sue E. Myerscough
                                 SUE E. MYERSCOUGH
                      UNITED STATE DISTRICT JUDGE